IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: THIRD PARTY SUBPOENA TO BRENDAN FISCHER | Misc. Case No. _____ <br><br> Case: 1:22−mc−00026 <br> Assigned To : Pan, Florence Y. <br> Assign. Date : 3/3/2022 <br> Description: Misc. |
| ROY S. MOORE <br><br> *Plaintiff* <br><br> v. <br><br> SENATE MAJORITY PAC, et al., <br><br> *Defendants* | Case No. 4:19-cv-1855-CLM (N.D. Ala.) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NON-PARTY BRENDAN FISCHER'S *EMERGENCY* MOTION TO
STAY AND QUASH THIRD-PARTY SUBPOENA**

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), non-party Brendan Fischer hereby moves (i) for an emergency temporary stay of a third-party subpoena seeking documents and a deposition issued from the United States District Court for the Northern District of Alabama (the "Subpoena"), and (ii) to quash the Subpoena.

The Subpoena should be quashed for at least four distinct reasons. First, the Subpoena was not properly served. The D.C. Circuit has held that a Rule 45 subpoena must be personally delivered to the person named in the subpoena, and yet Plaintiff attempted to deliver the Subpoena merely by leaving it on Mr. Fischer's doorstep.

Second, even assuming the Subpoena was successfully served, it does not "allow a reasonable time to comply" as required under Rule 45(d)(3)(A)(i). The Subpoena gives Mr. Fischer

3

just two-and-a-half days to produce documents in response to nine document requests and to appear for a deposition. That amount of time to comply is patently unreasonable.

Third, the Subpoena would impose an undue burden on Mr. Fischer in violation of Rule 45(d)(3)(A)(iv). Mr. Fischer—a former employee of a legal nonprofit that practices campaign finance law—has no connection whatsoever to Plaintiff's case, which involves defamation claims by a former U.S. Senate candidate against entities with which Mr. Fischer has no relationship. As such, Mr. Fischer has no personal knowledge or information relating to Plaintiff's claims and does not possess or control any documents that could possibly be responsive to the Subpoena. Yet if he were required to comply with the Subpoena, Mr. Fischer would, on less than three days' notice, be required to take time off work from a brand-new job for a needless deposition, which would also gratuitously put Mr. Fischer at additional risk of contracting COVID-19 and bringing the disease home to his unvaccinated 10-month-old daughter.

Finally, the Subpoena violates Rule 45 for the additional reasons that it improperly seeks privileged information and would require Mr. Fischer to testify as an unretained expert witness.

For each of these reasons, Mr. Fischer respectfully requests that the Court issue an order, on an emergency basis, either staying compliance with the Subpoena while it considers the motion to quash or granting the motion to quash in full.[1]

---

[1] Prior to filing this motion, and without waiving any objections or remedies, counsel for Mr. Fischer conferred with Plaintiff's counsel, Larry Klayman, by email regarding delaying the deposition and allowing Mr. Fischer a reasonable time to evaluate the Subpoena. Ex. 2 [Klayman Email.] Although Mr. Klayman indicated willingness to have a phone call to "try to work out" an agreement, counsel did not commit to delaying the deposition and instead stated that he would attempt "to accommodate" Mr. Fischer by seeking an extension of the underlying case's discovery deadline, *id.*, which, of course, Mr. Fischer had no role in setting. On a subsequent phone conference, Mr. Klayman informed the undersigned that he would not agree to postpone the deposition without an order from the court in Alabama extending the discovery schedule, and the undersigned notified Mr. Klayman of Mr. Fischer's intent to proceed with the motion to quash.

**BACKGROUND**

An individual attempted to serve the Subpoena on Mr. Fischer on Tuesday, March 1. Fischer Decl. ¶ 4. The individual knocked on Mr. Fischer's door at approximately 7:30 p.m. on that date, and although Mr. Fischer was home, he did not answer the door because he did not recognize the individual and was home alone caring for his 10-month-old daughter. *Id.* Approximately 15 minutes later, Mr. Fischer's spouse arrived home and discovered papers that had been left outside the home on the ground in front of their front door. *Id.* Upon picking up the papers, which included the Subpoena, Mr. Fischer's spouse was approached by the individual who had previously knocked on the door and told "those are papers for your husband." *Id.* The individual then left. *Id.* At no time did the individual interact in any manner with Mr. Fischer. *Id.* At no other date or time has anyone personally delivered the Subpoena to Mr. Fischer, nor has any person attempting to serve the Subpoena otherwise contacted Mr. Fischer at any other time. *Id.*

The subpoena seeks to compel Mr. Fischer to produce documents and attend a deposition in person in Washington D.C. tomorrow, Friday, March 4, 2022—just two-and-a-half days after Mr. Fischer first became aware of the subpoena. *See* Ex. 1 [Subpoena]. The Subpoena relates to a lawsuit brought by Plaintiff Roy Moore, who was a candidate for U.S. Senate in Alabama in 2017, against certain individuals and entities alleging defamation and intentional infliction of emotional distress. Compl. at 1, ECF 1, *Moore v. Senate Majority PAC*, No. 4:19-cv-01855-CLM (N.D. Ala. Nov. 15, 2019). Plaintiff alleges that Defendant Highway 31 Super PAC ("Highway 31") defamed him when it ran advertisements during his 2017 campaign stating that "Moore was actually banned from the Gadsden Mall . . . for soliciting sex from young girls" and calling Moore "a child predator." *Id.* ¶¶ 14-16, 31-32. Plaintiff Moore also asserts that Defendants Priorities USA, a 501(c)(4) organization, and Senate Majority PAC, another super PAC, funded and controlled

Highway 31, and asserts claims for defamation against both entities, as well as the chairman of Priorities USA and two media and marketing companies involved in developing and placing the relevant advertisements. *Id.* ¶¶ 4-7, 40-42, 47, 50-53.

Plaintiff's complaint relies largely on public reporting regarding Defendants' activities, statements, and spending during the 2017 Senate election in Alabama. *See id*. Plaintiff also cites an administrative complaint filed with the Federal Election Commission by Mr. Fischer's former employer, Campaign Legal Center ("CLC"), alleging that Highway 31 failed to report contributions from its vendors, Senate Majority PAC, and Priorities USA Action. *Id.* ¶ 43. Plaintiff also cites a statement Mr. Fischer gave to the media while employed at CLC about the campaign finance violations alleged by CLC in its administrative complaint. *Id.* ¶ 49.

Mr. Fischer is no longer an employee of CLC, and recently started a new job on Tuesday, March 1, 2022. Fischer Decl. ¶ 3. While at CLC, Mr. Fischer authored and submitted the administrative complaint referenced in Plaintiff's Complaint. *Id*. ¶ 2. Other than the facts set forth therein—all of which are publicly available—Mr. Fischer has no personal knowledge regarding matters bearing any possible connection to Plaintiff's Complaint, or the relationships between the various Defendants. *Id.* Mr. Fischer similarly does not have any documents related thereto in his possession, custody, or control. *Id.* ¶ 6. Further, Mr. Fischer has no personal knowledge related to the allegedly defamatory statements that form the basis of Plaintiff Moore's complaint, nor does he have in his possession, custody, or control any documents or other tangible things related to the same. *Id.* While Mr. Fischer is an expert on campaign finance law, he has no personal knowledge of any factual information relevant to Plaintiff's defamation claims. *Id.*

As stated above, Mr. Fischer has a ten-month old daughter at home, who is too young to be vaccinated. *Id.* ¶ 7. He works from home and does his best to limit in-person interactions to

avoid the risk of spreading COVID-19 to his spouse and unvaccinated child. *Id*. He is in the first week of a new job, which he started the same day he became aware of the Subpoena, and is in the midst of working through the myriad tasks associated with being a new employee. *Id.* ¶ 3, 8. Attending a deposition on Friday would require Mr. Fischer to take time off on short notice to his new employer, who has already asked him to attend multiple pre-scheduled meetings on that date, and could jeopardize his ability to satisfy his child-care obligations on Friday without sufficient time to make alternative arrangements. *Id.* at 8.

## ARGUMENT

Mr. Fischer respectfully requests that the Court, on an emergency basis, either grant the motion to quash or stay the Subpoena pending the Court's consideration of his motion to quash. This relief is appropriate under Rule 45 for at least four independent reasons. First, Plaintiff failed to properly serve the Subpoena by personally serving Mr. Fischer. Second, even assuming the Subpoena was properly served, it provides just two-and-a-half days to produce documents and appear for a deposition, which is not a reasonable amount of time. Third, compliance with the Subpoena would impose an undue burden on Mr. Fischer by taking him away from pre-existing family and employment responsibilities for a matter in which he lacks any relevant personal knowledge or possession or control over any sought-after documents. Finally, the Subpoena improperly requires disclosure of privileged or other protected information and calls for improper opinion testimony.

**I.    The Subpoena Was Not Properly Served**

The Subpoena should be quashed because it was improperly served. Rule 45(b)(1) states that "[s]erving a subpoena requires," among other things, "delivering a copy to the named person." "Reading the rule 'literally,' most courts"—including the D.C. Circuit—"have long construed

Rule 45 to require 'personal service of subpoenas' on third-party witnesses." *Henderson v. Day*, No. CV 19-945 (RDM), 2021 WL 1978793, at *2 (D.D.C. May 17, 2021) (quoting 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2454 (3d ed. Apr. 2021 update)). As a result of this personal-service requirement, "Rule 45[], governing subpoena service, does not permit any form of mail service, nor does it allow service of the subpoena merely by delivery to a witness' dwelling place." *FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1312-13 (D.C. Cir. 1980); *see also* Wright & Miller, *supra*, § 2454 ("[C]ontrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness."). Furthermore, it is also insufficient to deliver the subpoena to someone other than the person named in the subpoena. *See, e.g.*, *U.S. v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 36-38 (D.D.C. 2004) (holding that leaving subpoenas in a mail room or with support staff failed the personal service requirement of Rule 45); *Surbella v. Foley*, No. 2:05-cv-0758, 2006 WL 3007429, at *2 (S.D. Ohio Oct. 20, 2006) (delivery to witness's daughter at witness's residence was "not good service" of subpoena); *Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc.*, 211 F.R.D. 685, 687 (N.D. Ga. 2002) (service on non-party's wife at non-party's residence failed to accomplish personal service on non-party himself and thus did not satisfy Rule 45).

Here, Plaintiff's attempted service of the Subpoena was ineffective under Rule 45(b)(1) because it was not "deliver[ed]" to Mr. Fischer, who is "the named person" in the Subpoena. Instead, the Subpoena was left on the doorstep of Mr. Fischer's home. *See* Fischer Decl. ¶ 4. It was later found by Mr. Fischer's spouse, who, upon picking the Subpoena up off the ground, was approached by the process server and told that "those are papers for your husband." *Id.* The individual attempting to serve the Subpoena did not interact in any manner with Mr. Fischer. Decl.

8

*Id.* At no time has Plaintiff personally delivered the Subpoena to Mr. Fischer. *Id*. Although Mr. Fischer is aware of the Subpoena as a result of it being left on his doorstep, having actual notice of the existence of the Subpoena does not satisfy Rule 45(b)'s personal-service requirement. *See Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d at 1324 (explaining that "actual notice" does not excuse "improper technique of service" of a Rule 45 subpoena); *Call of the Wild Movie v. Does 1–1,1062*, 770 F. Supp. 2d 332, 361-62 (D.D.C. 2011) (requiring personal service even though the subpoenaed party acknowledged it received the emailed subpoena). The Subpoena should therefore be quashed. *See, e.g.*, *Call of the Wild Movie,* 770 F. Supp. 2d. at 362 (granting motion to quash subpoena "because the plaintiff did not abide by the requirements of Rule 45(b)(1) and personally serve its subpoena to a named person").

**II.     The Court Should Quash the Subpoena Pursuant to Rule 45(d)(3)**

A district court must, "[o]n timely motion . . . quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of privileged or other protected matter. . . or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Furthermore, a district court "may, on motion, quash or modify a subpoena if it requires. . . disclosing an unretained expert's opinion." *Id*. 45(d)(3)(B). The subpoena at issue here runs afoul of each of these restrictions, and thus should be quashed.

**A.     The Subpoena Does Not Provide a Reasonable Time to Comply**

First, the subpoena should be quashed because it fails to provide Mr. Fischer with a reasonable time to comply. *See* Fed. R. Civ. P. 45(d)(3)(A)(i). Mr. Fischer was not made aware of the subpoena until after business hours on Tuesday, March 1, leaving him approximately two days before he was purportedly due to produce documents and appear for a deposition on Friday, March 4. Fischer Decl. ¶ 4. "Two days' notice is plainly unreasonable." *See In re Malyugin*, 310 F. Supp.

9

3d 3, 5 (D.D.C. 2018) (quashing Rule 45 subpoena served two days prior to the date of compliance for failure to provide reasonable time to comply); *see also Judicial Watch v. U.S. Dep't of Com.*, 34 F. Supp. 2d 47, 49-50 (D.D.C. 1998) (finding that a non-party witness "was entitled to object to a subpoena served only one or two days before her scheduled deposition" and that the proper course in such a circumstance is to move to quash or modify the subpoena). Even counting March 1 as a full day, three days' notice would still be insufficient to provide Mr. Fischer a reasonable time to comply. *Cf.* LCvR 30.1 (reasonable notice for party depositions is seven days after service). As such, the Court should quash the Subpoena. Fed. R. Civ. P. 45(d)(3)(A)(i).

### B. The Subpoena Would Impose an Undue Burden

Second, the Subpoena is also due to be quashed because forcing Mr. Fischer to comply would subject him to an undue burden. Under Rule 45(d)(3)(A)(iv), the "'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007). As discussed, the Subpoena unreasonably provides less than three days for compliance. Furthermore, Mr. Fischer started a new job on Tuesday, and the deposition would force him to take time off work and miss meetings, just three days after beginning his new position, on short notice to his new employer. Fischer Decl. ¶ 8. It would also interfere with his child-care obligations and put him at additional risk of contracting COVID-19 and bringing the disease home to his spouse and ten-month old unvaccinated daughter. *Id.* ¶ 7-8. Indeed, counsel for Plaintiff have both recently contracted COVID-19, apparently through exposure during their work in the underlying and other matters. *See* Pl.'s Supplement to Emergency Mot. to Extend Discovery Deadline at 1, ECF 106, *Moore*, No. 4:19-cv-01855-CLM (N.D. Ala. Feb. 2, 2022).

Further, Plaintiff's apparent desire to depose Mr. Fischer about information that is publicly available and of tangential significance (at most) to the underlying litigation is outweighed by the burden on Mr. Fischer. *See Watts*, 482 F.3d at 509 (finding that in evaluating Rule 45 subpoenas courts must consider "whether 'the burden or expense of the proposed discovery outweighs its likely benefit'") (quoting Fed. R. Civ. P. 26(b)(1)). Mr. Fischer does not possess any relevant information regarding Plaintiff's claims. Mr. Fischer has no personal knowledge or information at all about the substance of Plaintiff's defamation claims, nor about the allegedly defamatory statements. Fischer Decl. ¶ 2, 6. Mr. Fischer similarly does not have any relevant or responsive documents in his possession, custody, or control, nor do the document requests appended to the subpoena appear targeted to subjects relevant to Mr. Fischer. Decl. ¶ 6; *see also* Ex. 1 (seeking, *inter alia*, "documents that refer or relate to the claim or allegation that Roy Moore was banned from the Gadsden Mall for soliciting sex from minors or underage children" or that relate to advertising campaigns that concern such claims; communications between Defendants, their agents, and employees; and communications with or between the Covington & Burling Law Firm and Defendants concerning Plaintiff Moore, none of which could reasonably be expected to be in Mr. Fischer's possession or control).

To the extent Mr. Fischer knows anything about Defendants' activities in 2017, that information is limited to the narrow question of how campaign finance law applied to their activities—a question that is not at issue in Plaintiff's case. Fischer Decl. ¶ 2. Furthermore, all of the factual evidence underlying Mr. Fischer's knowledge of those activities is publicly available and is either cited in, attached to, or stated in the administrative complaint filed by CLC. *Id*. ¶ 2, 6. Thus, to the extent Plaintiff seeks this information it is "obtainable from some other source that is more convenient, less burdensome, [and] less expensive," *Watts*, 482 F.3d at 509 (quoting Fed.

R. Civ. P. 26(b)(1)), than forcing Mr. Fischer to sit for a deposition—indeed Plaintiff already has in its possession any and all such information, Compl. ¶ 49, ECF 1, *Moore*, No. 4:19-cv-01855-CLM, or can easily obtain it from CLC's website.[2]

Even to the extent Plaintiff believes Mr. Fischer might have additional knowledge relevant to Plaintiff's claims—which Mr. Fischer does not—the fact that Plaintiff waited until the last minute to seek such information also weighs in favor of quashing the subpoena. Plaintiff Moore has been on notice of Mr. Fischer's knowledge of alleged campaign finance violations by Defendants since the inception of this case. *See* Compl., ECF 1, *Moore*, No. 4:19-cv-01855-CLM. Nonetheless, he only attempted to set Mr. Fischer's deposition on the final day of discovery. *See* Text Order, ECF 110, *Moore*, No. 4:19-cv-01855-CLM (N.D. Ala. Feb. 8, 2022) (extending discovery deadline from Feb. 24 to Mar. 4, 2022).[3] Plaintiff's own lack of planning does not entitle him to force Mr. Fischer to sit for a deposition on short notice, nor does it outweigh the significant burden that will be imposed on Mr. Fischer if he is required to appear.

### C. The Subpoena Requires Disclosure of Privileged Materials and Unretained Expert Opinion

Finally, to the extent Plaintiff seeks to compel Mr. Fischer to divulge non-public legal advice or opinions developed or made in relation to legal work he did in his role as an attorney at CLC, such information is protected under the attorney-client and work product privileges. As such, the subpoena should be quashed pursuant to Rule 45(d)(3)(A)(iii). And, to the extent Plaintiff seeks

---

[2] Highway 31 Complaint (Mar. 5, 2018), https://campaignlegal.org/document/complaint-against-highway-31-federal-election-commission.

[3] Because the discovery deadline in the underlying matter is the same as the compliance date in the subpoena at issue, there is no way for the Court to modify the subpoena without interfering with the discovery deadlines imposed by the U.S. District Court for the Northern District of Alabama. For comity reasons, quashing the subpoena is therefore the only appropriate remedy under Rule 45(d)(3)(A).

to obtain opinion testimony from Mr. Fischer about the relationship between the Defendants based on his expertise in campaign finance law, the subpoena should be quashed pursuant to Rule 45(d)(3)(B), as it would force Mr. Fischer to testify as an unretained expert, *see Convolve v. Dell*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (finding that a subpoena that "effectively requires [a] non-party. . . to act as an unpaid expert witness. . . is an abuse of the subpoena power"); *see also Mattel v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003) (finding that the Rule "was intended to provide 'appropriate protection for the intellectual property of [the] non-party witness'") (quoting Fed. R. Civ. P. 45 1991 amend. note); Fed. R. Civ. P. 45 (1991 amend. note) (explaining that where a subpoena denies an expert "the opportunity to bargain for the value of their services" they are "entitled to withhold their expertise").

## CONCLUSION

For the foregoing reasons, Mr. Fischer respectfully moves this Court to quash the subpoena issued by Plaintiff Moore in his defamation case in the U.S. District Court for the Northern District of Alabama.

Dated: March 3, 2022

Respectfully submitted,

/s/ *Molly E. Danahy*
Adav Noti (DC Bar No. 490714)
Kevin P. Hancock*
Molly E. Danahy (DC Bar No. 1643411)
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegalcenter.org
khancock@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org

*Counsel for Movant Brendan Fischer*

---

\* Application for Pro Hac Vice admission forthcoming. *Barred in the State of New York. Not admitted to the D.C. Bar. Practicing under the supervision of Adav Noti, member of the D.C. Bar.*